KROLIK *v.* SAULT SAVINGS BANK.

PECK *v.* SAME.

THOMAS BRIGGS SHOE CO. *v.* SAME.

FRAUDULENT   CONVEYANCES — PREFERENCES — GARNISHMENT —
  DEBTOR AND CREDITOR.

    It is no fraud upon creditors if the wife of one partner of a
  firm which is largely indebted prefers one of the creditors by
  giving a mortgage upon her property to secure the debt, and
  the proceeds of property do not, after sale, thereby become
  assets of the firm, or subject to garnishment by its creditors,
  even although settlement is made by the firm with other
  creditors at fifty cents on the dollar, upon false representa-
  tions that the other creditors have accepted an equal propor-
  tion.

Error to Chippewa; Shepherd, J., presiding.   Submit-
ted February 17, 1910.   (Docket Nos. 57–60.)   Decided
April 1, 1910.   Rehearing denied May 7, 1910.

Garnishment proceedings by Herman Krolik and others,
copartners as A. Krolik & Co., by Wilbur S. Peck and
others, copartners as W. S. Peck & Co., and by the
Thomas Briggs Shoe Company, against the Sault Sav-
ings Bank, garnishee of Cyrus W. Baldwin and Paul J.
Besner, copartners as Baldwin & Besner.   A judgment
for plaintiffs is reviewed by garnishee defendant on writ
of error.   Reversed.

*Warner & Sullivan* (*John H. Goff*, of counsel), for
appellant.

*Bernard B. Selling* and *Francis T. McDonald*, for
appellees Herman Krolik and others, and the Thomas
Briggs Shoe Co.

*Davidson & Hudson*, for appellees Wilbur S. Peck and
others.

BROOKE, J.   The four cases were heard as one before the trial judge, who made findings of fact and of law. He decided there was $4,000 liable to garnishment in these proceedings.   The case is brought here by writ of error.

The statements of facts are presented in great detail by counsel in their briefs, and many interesting questions of law are presented.   We shall state only sufficient to indicate what we think must be done with the cases.   Prior to October 29, 1906, the firm of Baldwin & Besner was indebted to the defendant bank in the sum of $8,000.   At about this time the firm was in greatly embarrassed circumstances owing its other creditors large sums of money.   It sought to settle with its creditors for 50 cents on the dollar.

We quote from the brief of counsel for appellees:

"On October 29, 1906, Mr. Weaver sent for Cyrus W. Baldwin, and persuaded him to have Mrs. Baldwin execute to Mr. Weaver a mortgage for $4,000 on Mrs. Baldwin's homestead.   The mortgage bears date October 29, 1906, was acknowledged November 1, 1906, and was recorded upon the same day.   On November 1, 1906, Mr. Weaver assigned this mortgage to the Sault Savings Bank; the assignment being recorded in the office of the register of deeds November 2, 1906.   Mr. Weaver claims that upon the execution of this mortgage the $4,000 in notes of Baldwin & Besner bearing his indorsement were transferred by the bank to Mrs. Baldwin without recourse against the bank or indorsers, and that she immediately, or shortly thereafter, indorsed the notes over to Mr. Weaver, who still holds them; Mr. Weaver claiming that he is holding them simply for collection for Mrs. Baldwin.

"In the meantime Mr. Besner who had no knowledge of this transaction between Mr. Baldwin, Mrs. Baldwin, Mr. Weaver, and the Sault Savings Bank, but expecting, nevertheless, to pay the bank up in full, went to see his creditors.   He first called upon Mr. Peck of W. S. Peck & Co., his largest merchandise creditor, showing the statement of liabilities referred to, in which the Sault Savings Bank appeared as a creditor to the amount of $8,000. He asked Mr. Peck to settle on the basis of 50 cents on the dollar, telling him that the Sault Savings Bank would do likewise.   He told him that, if they would give him a

chance to wiggle out, he would pay them in full later. This same statement was made to his creditors generally. Mr. Peck consented to settle and signed a memorandum reading as follows:

"'November 1, 1906.

"'Messrs. BALDWIN & BESNER,
      "'Sault Ste. Marie, Michigan.
   "'*Dear Sirs:* After examining your liabilities and your assets and the information obtained through you and through others we have decided to accept your settlement of fifty cents on the dollar cash, provided other creditors accept the same.
      "'Respectfully yours,
         "'W. S. PECK & Co.'

"Mr. Besner went from Syracuse direct to Chicago to see the Chicago creditors, and arrived in Chicago November 2, 1906. He went to see one of the larger creditors, Keith Bros. The general manager of Keith Bros said to Besner:

   "'If I were you, I would telegraph to your bank before I saw another creditor. They don't all know you as well as I do.'

"Mr. Besner thereupon telegraphed to the Sault Savings Bank, asking Mr. Weaver to verify his statement that he would take 50 cents on the dollar with the balance of the creditors. The reply of the bank to this telegram was received at Chicago at 11:52 a. m., November 2, 1906, and was as follows:

   "'SAULT STE. MARIE, MICH., Nov. 2, '06.
"'PAUL J. BESNER,
   "'Care of Keith Brothers,
      "'Chicago, Illinois.
   "'Believe you have been square. Local conditions are against you. Think fifty cents on the dollar more than can be realized any other way so will accept with regret.
      "'SAULT SAVINGS BANK.'

"It will be noted that this telegram was received in Chicago less than an hour after the Sault Savings Bank had put on record the assignment of the $4,000 mortgage from Mrs. Baldwin. Mr. Besner showed this telegram to Keith Bros. and attached it to his agreement of acceptance, which was being signed by the creditors. It was shown to all of the creditors who accepted except Peck & Co., who had signed ahead of Keith Bros."

It is claimed by the creditors represented in these proceedings that the bank concealed the fact that Mrs. Baldwin had secured the payment of $4,000 of debts, and that the creditors were defrauded by this concealment. The bank claims that some of the creditors had secret agreements for full payment. The result of what was done was that Baldwin & Besner resumed business. New debts were made. We now quote from the brief of counsel for appellant:

"December 14, 1906, after receipt from most of the creditors of acceptances of the proposed settlement, Baldwin & Besner borrowed from the Sault Savings Bank $7,000, with which the accepting creditors were paid 50 per cent., and gave said bank a chattel mortgage for $11,000 to cover that loan and 50 per cent. of the original $8,000 indebtedness. This chattel mortgage was duly filed and properly renewed.

"After the chattel mortgage was given, and while it was on file, Krolik & Co. and W. S. Peck & Co. sold new merchandise to Baldwin & Besner on credit, and the Thomas Briggs Shoe Company, which was not a creditor when the chattel mortgage was given, also sold them merchandise, and it is upon these accounts and the note to Krolik & Co. that judgments have been rendered against the principal defendant in these cases.

"In December, 1907, Baldwin & Besner hired a Chicago party to conduct a special sale for them. They had paid nothing upon the chattel mortgage and had accumulated a new indebtedness of over $6,000. The bank, not wishing to see its security depleted, arranged with Mr. Besner to have the proceeds of that sale, amounting to $4,243, after the payment of running expenses and some small items for new merchandise, applied upon its mortgage, leaving a balance due upon the mortgage of $7,394.70.

"On December 26, 1907, the bank took possession of the remaining assets of Baldwin & Besner under its chattel mortgage, and on the 28th of December advertised the same to be sold January 3d, 1908, at which time all the assets covered by the mortgage were sold at public auction for $8,050. The bank paid the expenses of the sale and the amount of its mortgage with the proceeds of the sale, and admits a balance in its hands of $689.86, subject to the claim of Baldwin & Besner to exemptions.

"In June, 1908, Elizabeth Baldwin, wife of Cyrus Baldwin, deeded to Milvern J. Weaver the property upon which she had given him the $4,000 mortgage on October 29, 1906; Weaver assuming and agreeing to pay that mortgage and another mortgage given to the bank a long time previous thereto and paying the difference in cash to Mrs. Baldwin.

"Krolik & Co. immediately after the chattel mortgage sale commenced two suits, the first upon the note and the second upon the open account, followed by the Thomas Briggs Shoe Co. and W. S. Peck & Co., in the order named, and the cases were tried together under stipulation before the court without a jury, who found the chattel mortgage void as to the $4,000, and rendered judgment against the garnishee defendant in all the cases."

As already intimated, it will not be necessary to discuss the many questions presented by the record. Neither Baldwin & Besner nor the creditors of that firm had any claim upon the property of Mrs. Baldwin. If she saw fit to devote a portion of it to pay the debts of a firm of which her husband was a member, she had a right to do so, and she also had a right to select the creditor to whom she should turn over the property, and the other creditors had no right to complain of her action when she did so. It was no fraud upon them for her to do so. When the payment was made, it did not become assets of the firm, which could be made available by process of garnishment, or otherwise, for the payment of the creditors of the firm. It was a transaction between Mrs. Baldwin, the firm, and the bank into which the other creditors had no right to go. The fund thus paid over was not subject to garnishment.

The judgment is reversed.

HOOKER, MOORE, MCALVAY, and STONE, JJ., concurred.